# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE A. JOHNSON, | : | CIVIL NO. 1:09-CV-267 |
| Plaintiff, | : | |
| v. | : | (Caldwell, J.) |
| WARDEN DOMINICK DEROSE, et al., | : | (Carlson, M.J.) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

## I. Introduction

This is a *pro se* civil rights action brought by a former inmate in the Dauphin County Prison. This matter was initially assigned to Judge Mannion and then was reassigned to this Court. Over the past eight months, the Court has repeatedly identified for Johnson deficiencies in his complaint, and offered him opportunities to correct those deficiencies. Despite these efforts, Johnson's complaint remains fatally deficient in several respects, and Johnson is now refusing to accept mail from the Court relating to the lawsuit which he brought in this court. Given these developments, it is recommended that the complaint be dismissed.

II. **Statement of Facts and of the Case**

   A. **Johnson's Initial Complaint**

On February 10, 2009, the plaintiff, a former inmate at the Dauphin County Prison, Harrisburg, Pennsylvania, filed a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.)

In his initial complaint, the plaintiff alleged that on May 29, 2008, a fight broke out between inmates at approximately 7:30 p.m. According to the plaintiff, "Officer Geffory Timothly" was the officer on the cell block at the time. The plaintiff indicated that he was locked in his cell at the time of the fight because his recreation time was over, and that he was not involved with the incident. Apparently, however, the plaintiff was included among those placed in lock down.

Subsequently, the plaintiff alleged that he asked the block officers if he could speak with a "white shirt," meaning a lieutenant, captain or deputy warden, but his request was denied. The plaintiff claimed that he was told that, if he kept asking, he would stay in lock down. According to the plaintiff, he reported this to his case worker, who failed to take any action.

On June 16, 2008, the plaintiff alleged that "they" took all of his belongings and left him with only a jumpsuit, shower shoes and a blanket. He further alleges that

the food he was served was not nutritious and that he had to eat cold cuts three times per day.

On the basis of these assertions the plaintiff claimed that his First Amendment free exercise rights and Eighth Amendment rights had been violated. As a result, Johnson sought $25 million in damages.

### B. Judge Mannion's March 10, 2009 Order

On March 10, 2009, Judge Mannion entered an order in this case following his preliminary screening of the plaintiff's complaint. (Doc. 9.) In this order, Judge Mannion warned Johnson that his complaint was facially inadequate because it failed to articulate a valid cause of action against the individual defendants. (Id.) Judge Mannion instructed Johnson to file an amended complaint on or before March 30, 2009. (Id.) Judge Mannion subsequently extended that filing deadline to April 24, 2009. (Doc. 12)

### C. Johnson's Amended Complaint

On April 8, 2009, Johnson filed an amended complaint in this matter. (Doc. 13.) While the compliant alleged that the warden ordered a lockdown of the prison following an inmate disturbance and recited that Officer Timothy was on duty at the time of the prison lockdown, liberally construed, this amended complaint did little more than offer threadbare recitals of the elements of a cause of action, supported by

conclusory statements naming the prison, its warden and a correctional officer as defendants. Thus, the amended complaint did little to address the deficiencies cited by Judge Mannion in March 2009. Nonetheless, the court permitted service of this amended complaint upon the defendants. (Doc. 14.)

### D. The Defendants' Motion to Dismiss

On June 22, 2009, the defendants moved to dismiss Johnson's complaint. (Doc. 19.) The brief filed in support of this motion, (Doc. 21.), asserted that the complaint was deficient in that it: (1) failed to state cognizable claims under the First and Eighth Amendments; (2) failed to state facts revealing personal involvement by the named individual defendants in any alleged violation of the plaintiff's constitutional rights; and, (3) improperly named the Dauphin County Prison as a defendant in this Section 1983 case. This motion was fully briefed by the defendants on July 6, 2009 (Doc. 21.), and was ripe for response by Johnson in July 2009.

### E. Johnson Fails to Respond to the Motion to Dismiss

While the defendants' motion was ripe by July 6, 2009, Johnson took no action to respond to the motion, or otherwise litigate this case between July 2009 and September 1, 2009 when this case was reassigned from Judge Mannion to this Court. (Doc. 22.) Thus, seven weeks elapsed without any action on Johnson's part.

## F. The Court Orders Johnson to Respond to the Motion to Dismiss

On September 1, 2009, this Court entered an order in this case directing Johnson to respond to the pending motion to dismiss. (Doc. 23.) This order "noted that a motion to dismiss was filed and fully briefed by the defendants on July 6, 2009 (Doc. 19 and 21)." The order went on to advise Johnson, in clear and precise terms as follows:

> "When a motion to dismiss, like the motion which is now pending, is filed Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond, and provides that:
>
>> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a responsive brief.
>
> Local Rule 7.6 (emphasis added)."

The Court then directed Johnson to respond to this motion on or before September 25, 2009. (Doc. 23.)

**G. Johnson Acknowledges Receipt of the Court's Order, and Requests Additional Time to Repond, but then Refuses Receipt of the Court's Order Granting His Request, and Fails to File a Timely Response**

Following the entry of this order, on September 15, 2009, Johnson filed a motion for an extension of time in which to file a response in opposition to this Motion to Dismiss. (Doc. 26.) In an effort to afford Johnson every opportunity to respond, the court granted this motion on September 18, 2009, and instructed Johnson to file a response on or before October 13, 2009. (Doc. 28.) Like our September 1 order, this September 18 order advised Johnson of his obligations under Local Rule 7.6, and warned the plaintiff that:

> Consistent with Local Rule 7.6 the plaintiff is advised that the failure to timely respond to this motion may result in a finding that the plaintiff is deemed not to oppose such motion.

(Doc. 28.)

A copy of this order was then mailed to Johnson at FCI Schuylkill, where he is currently housed. Ten days later, on September 28, 2009, the court was notified that Johnson refused to accept delivery of this court order, granting his request for an extension of time in which to respond to this motion to dismiss. (Doc. 29.) The latest deadline prescribed by the Court for filing a response has now elapsed without action on Johnson's part.

II. **Discussion**

   A. **The Plaintiff's Claim For a Specific Sum of Unliquidated Damages Should be Stricken**.

At the outset, the Court should strike the claim for a specific sum of unliquidated damages, $25,000,000, from the *pro se* complaint. In this regard we note that this Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

Rule 12 (f) of the Federal Rules of Civil Procedure, in turn, imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P., Rule 12 (f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, Johnson's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief <u>but shall not claim any specific sum where unliquidated damages are involved.</u> The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since Johnson's prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim will be stricken from the complaint.

### B. Johnson's Procedural Defaults Warrant Dismissal of This Action.

In addition, Johnson has defaulted on a number of important procedural deadlines in the course of this litigation. These procedural defaults frustrate and impede efforts to resolve this matter in a timely and fair fashion, and warrant dismissal of the action at this time.

In the first instance, Johnson has failed to timely respond to this motion to dismiss, and now is refusing to accept mail from the Court setting schedules for litigation of this case. Johnson was warned of the implications of failing to reply to defense motions when he was provided with the Standing Order of this Court, and

given a copy of Local Rule 7.6 of the Rules of this Court which imposes an affirmative duty on the plaintiff to respond, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added).

Johnson was further warned of the effect of Rule 7.6 in this Court's orders of September 1 and 18, 2009. Despite receiving multiple written notices of the consequences which may flow from a failure to respond to a defense motion, to date Johnson has not responded to this motion, and is now refusing mail from the court.

These procedural defaults justify dismissal of this action. Moreover, in this case, simply offering Johnson yet another opportunity to amend his pleadings would not cure all of the defects in this complaint and would likely be futile, since Johnson is now refusing to accept mail from the court. Therefore, while in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), granting further leave to amend is not

necessary when amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The principle of futility applies here, where the plaintiff has failed to comply with multiple instructions from the court, and is now refusing to accept mail from the court. Therefore, allowing further leave to amend is not necessary, or appropriate, in this case. Rather, Johnson's complaint should simply be dismissed.

    **C.**    **Johnson Has Not Stated a Legally Sufficient Cause of Action Against The Individual Defendants and The Dauphin County Prison**

Finally, Johnson's complaint fails to state a claim upon which relief can be granted. The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6), which governs motions to dismiss like the motion lodged in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our

> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, –F.3d–, 2009 WL 2501662, at 7 (3d Cir. Aug. 18, 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950 .

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, –F.3d–, 2009 WL 2501662, at 8 (3d Cir. Aug. 18, 2009).

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether the complaint states a valid cause of action against the various named defendants in their individual and official capacities. Conducting this threshold legal analysis we find that the complaint continues to be deficient on a number of grounds, and that these deficiencies have not been corrected despite numerous warnings from the court.

Our review of this complaint leads us to conclude that, in its current form, the complaint fails to state a valid cause of action against both the individual prison officials, Warden DeRose and Correctional Officer Timothy and the institutional

defendant, the Dauphin County Prison. Johnson's complaint alleges, in conclusory terms, that these defendants violated his First and Eighth Amendment rights. Yet, Johnson must make some greater threshold showing relating to each defendant to sustain these claims.

Thus, with respect to a First Amendment claim, while it is well-settled that inmates "have a constitutional right to free exercise of their religion," Williams v. Sweeney, 882 F. Supp. 1520, 1523 (E.D. Pa. 1995) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987)), prison officials must be given substantial deference in the administration of their institutions. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). When a prisoner claims that his right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). Moreover, in order for a prisoner to claim that the free exercise of his religion was violated, he must show that a prison rule or practice was not reasonably related to legitimate penological interests. To determine reasonableness of the regulations, a court must consider four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the

impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives. Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003).

Similarly, Johnson faces an exacting burden in advancing an Eighth Amendment claim against these prison officials in their individual capacities. To sustain such a claim, Johnson must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but

where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.).

Nor can such a claim of a constitutional deprivation be premised merely on the fact that the defendants were prison officials when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997) ; see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to the Warden it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), See also Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2008).

These same principles apply to the Dauphin County Prison as an institutional defendant in this case. With respect to such institutional defendants it is well-established that;

> [A] County cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. See Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996).

Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).

Judged against these standards, Johnson's complaint simply fails. Even liberally construed, the complaint does not reach the demanding standards required for pleading a violation of the United States Constitution. Nor does the complaint factually link either individual named defendant in any meaningful way to any alleged deprivation of a right guaranteed by the Constitution. Indeed the complaint simply alleges that the warden ordered a lockdown of the prison following an inmate disturbance and recites that Officer Timothy was on duty at the time of the prison lockdown. As to both defendants, these factual recitals, standing alone, simply do not permit a finding of personal involvement in alleged wrongdoing of a constitutional dimension. The failure to plead facts relating to the individual defendants' direct

involvement in this conduct is fatal here since individual liability under § 1983 cannot be predicated solely on the principle of respondeat superior.

Similarly, Johnson's complaint does not plead facts that "demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996)." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). Therefore, Johnson's complaint does not state a valid cause of action against this institutional defendant.

In short, without the inclusion of some further well-pleaded factual allegations, Johnson's allegations appear to be little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft, 127 S.Ct. at 1979. Therefore the individual and institutional defendants are entitled to be dismissed from this complaint.

### III. Recommendation

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** as follows:

1. The Plaintiff's claim for specific unliquidated damages should be stricken.

2. Due to the plaintiff's dual procedural defaults in failing to file a response in opposition to the motion to dismiss this complaint the complaint should be **DISMISSED** in its entirety. Since these failures have been repeated in nature it is

recommended that the plaintiff not be afforded leave to try to further amend his complaint.

3. In its current form, the Plaintiff's complaint fails to state a valid cause of action and should be **DISMISSED** for failure to state a claim upon which relief can be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of October 2009.


*S/Martin C. Carlson*
**United States Magistrate Judge**