IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE A. JOHNSON, | : | CIVIL NO. 1:09-CV-267 |
| Plaintiff, | : | |
| v. | : | (Caldwell, J.) |
| WARDEN DOMINICK DEROSE, et al., | : | (Carlson, M.J.) |
| Defendants. | : | |

# REPORT AND RECOMMENDATION

I. **Statement of Facts and of the Case**

A. **Procedural Background**

On February 10, 2009, the Plaintiff, a former inmate at the Dauphin County Prison, Harrisburg, Pennsylvania, filed a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) In his complaint, and in an amended complaint filed by Johnson on April 1, 2010, (Doc. 43) the Plaintiff alleged that in May and June of 2008, while he was housed as a federal pre-trial detainee in Dauphin County Prison, the prison was placed in a lock-down status as a result of a fight that broke out between inmates, and a subsequent riot at the prison. (Id.)

According to Johnson, while he was held in this lock-down status, his First Amendment rights were abridged by prison officials in that he was unreasonably denied access to a Bible and church services. (Id.) Johnson further claimed that he

was subjected to inhumane conditions of confinement while held in this lock-down status. (Id.) In addition, Johnson asserted that he was improperly subjected to strip searches in prison during this lock-down. (Id.) Finally, Johnson claimed that prison officials denied him due process in the course of a disciplinary hearing which resulted in a finding that Johnson had violated institutional rules at this facility. (Id.)

### B. The Defendants' Summary Judgment Motion

This matter now comes before the Court on a motion for summary judgment filed by the Defendants. (Doc. 57.) That motion for summary judgment reveals the following, essentially undisputed facts:

On March 19, 2008, Johnson was committed to the custody of the Dauphin County Prison, as a federal pre-trial detainee charged with federal drug offenses.(Doc. 60, Ex.B, Affidavit of Warden DeRose, ¶ 3.) By the time of this March, 2008, confinement, Johnson had received a copy of the Dauphin County Inmate Handbook. (Doc. 60, Ex.A, Deposition of Plaintiff, N.T. 57-58:25-2.)

This prison handbook prescribed a series of prison policies, including policies for filing grievances regarding prison conditions and the conduct of prison staff. With respect to prison grievances procedures, the policy handbook explained that, under the grievance appeal process at the prison, inmates are required to follow four steps to grieve any condition of confinement or alleged misconduct by staff: (1) the

submission of a grievance for review and determination by the Warden; (2) an appeal of the Warden's decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor. (Doc. 60, Ex. B, ¶ 25.) In this case, Johnson has admitted that he did not submit any written grievances, inmate request forms, statements, or other writings to Warden DeRose or other prison staff about the allegations contained in his Complaint, Amended Complaint, or Second Amended Complaint. (Doc. 60, Ex. A, N.T. 58:5-22; Exhibit "B", ¶¶ 22-34.)

The incidents that give rise to Johnson's complaint began on May 29, 2008, when Johnson was housed as a federal pre-trial detainee on the C-Block of the Dauphin County Prison. (Id., Ex. B, ¶ 5.) On May 29, 2008, there was an altercation on the upper tier of C-Block which resulted in a call for "all guards" as an inmate was assaulted by other inmates. (Id., Ex. B, ¶ 6.) As a result of the May 29, 2008 altercation, C-Block was placed on lock-down status. (Id., Ex. B, ¶ 7.) The inmates on C-Block, including Johnson, remained on lock-down status for a period of time following this assault because of the continuing disruptive behavior of inmates and the discovery of contraband including weapons in the cell block. These steps were

taken, in the face of on-going disruptions, and following the discovery of weapons in the prison, in order to maintain security at the Prison. (Id., Ex. B, ¶ 8.)

While these disruptions compelled additional security measures during this lock-down status, Johnson was permitted to retain bedding, uniform, hygiene products, legal materials, written correspondence materials, one religious book, two books for counseling, underclothing, socks and thermal underwear in his cell. (Id., Ex. B, ¶ 9.) Moreover, prison officials assert without contradiction by Johnson that the Plaintiff was also permitted to meet with his religious advisor and attorney while on lock-down status. (Id., Ex. B, ¶ 10.)

On June 16, 2008, Johnson was still housed on the C-Block in Dauphin County Prison when a second serious disturbance erupted at that facility. (Id., Ex. B, ¶ 11.) Specifically, on June 16, 2008, the inmates on C-Block engaged in a riot, which included assaulting staff and destroying County property. (Id., Ex. B, ¶ 12.) As a result of the June 16, 2008, riot, one inmate was charged with two counts of prohibited possession of an offensive weapon and one inmate was charged with one count of aggravated assault of a correctional officer. (Id., Ex. B, ¶ 13.) Because of the riot, prison officials were compelled to re-classify C-Block to a heightened security state, a "segregation issue" status. (Id. Ex. B, ¶ 14.) This "segregation issue" status classification was adopted to maintain security and for the safety of both inmates and

4

Prison staff in the aftermath of this prison riot. (Id., Ex. B, ¶ 15.) During this period when the unit was on "segregation issue" status, inmates, including Johnson, were provided with basic necessities including a blanket, mattress, and a jumpsuit as well as toilet paper and access to water. (Id., Ex. B, ¶ 16.) Johnson remained housed in this unit under the heightened security circumstances for only a brief period of time and was released from this unit by July 16, 2008. (Id., Ex. B, ¶ 18.) Thus, Johnson did not remain on "segregation issue" status for the entire period of June 16, 2008, and July 16, 2008. (Id., Ex. B, ¶ 19.) Further, Johnson was released from lock-down status on August 14, 2008. (Id., Ex. B, ¶ 21.)

It is undisputed that Johnson never lodged a proper grievance at the prison with respect to any of the incidents and allegations arising out these May and June, 2008, lock-downs at the prison. (Id. Ex. B, ¶¶22-34.) Johnson failed to grieve any of these prison conditions, despite having received a copy of the manual outlining this grievance policy and being aware of these grievance procedures. (Id.)

### C. Johnson's Response to The Summary Judgment Motion

Johnson has now submitted a response to this carefully documented summary judgment motion. (Doc. 65.) This response is notable for what it does not dispute. In his response Johnson does not dispute in any material way the factual recitations set forth in the Defendants' summary judgment motion. In particular, Johnson does not

in any way contest or dispute the Defendants' assertion that he completely failed to pursue any administrative remedies within the prison system with respect to the matters set forth in his complaint and amended complaint. (Id.)

Instead, Johnson simply uses this response as a platform for articulating his own idiosyncratic views regarding the scope of federal jurisdiction. Thus, Johnson begins his response by asserting as follows:

> Your Aggrieved Plaintiff herein George Johnson, the natural born citizen of the United States and State of New York citizen by permanent and life long residency, is the original complainant in the civil rights action sub judice ab initio; appearing today involuntarily as stated in the above caption as to a Fiction: to wit: "OPPOSING PARTY" as defined at Federal Rules of Civil Procedure Rule 56(e) (attached hereto as EXHIBIT A, and incorporated hereinfully by reference) and do herewith address the substance of the defendants' attorney's assertion and not the form it is asserted in....

(Id. at p. 1.)

Citing the Supreme Court's Dredd Scott decision,[1] Johnson then insists that:

> [It was] settled as long ago as 1856, a person who, is without citizenship status within one of the States of the Union is precluded from bringing his case into the judicial Power of our Third Branch of government... . Defendants having failed to admit aggrieved citizen Mr. Johnson's verified factual complaint is true and claimed defendants are entitled to Summary Judgment as a matter of law; but in the alternative did as stated herein above assert specific denial of plaintiff's factual statement of his status being solely that of a State of New York citizen, this disagreement is a controversey [sic] between plaintiff and defendants

---

[1] Dredd Scott v. Sandford, 60 U.S. 393(1856).

herein that goes to the heart of the right for the original complaint to be heard in courts of the United States ab initio ("from the beginning").

(Id., p. 5.)

Johnson closes his response to this summary judgment motion with the following peroration:

> WHEREFORE, as without State of New York citizen status Mr. Johnson is not entitled to sue or be sued under the judicial Power exercised by our Courts of the United States and their [sic] is administrative and statutory court proceedings for illegal aliens, terrorist, criminal illegal aliens (those who re-enter illegally after being deported) and others, Mr. Johnson prays this Honorable Court deny the Defendants Motion in the nature of a demurrer or in the alternative set the matter of Mr. Johnson's claim of state citizenship and the defendants denial of same under assertion of pre-trial detainee status for jury trial determination.

(Id., p. 6.)

Johnson having filed a response to this summary judgment motion which does not in any way contest the fact that the Plaintiff never exhausted his administrative remedies in the prison system before filing this lawsuit, this matter is now ripe for resolution. For the reasons set forth below, it is recommended that the Defendants' motion for summary judgment (Doc. 57) be granted.

### III. Discussion

#### A. Summary Judgment-Standard of Review

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

8

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## B. Johnson Failed to Properly Exhaust His Administrative Remedies

The Defendants first urge the Court to grant summary judgment on the Plaintiff's claims because Johnson failed to exhaust the administrative remedies available to him under prison procedures, since Johnson failed to exhaust any grievances following these lock-down episodes. Thus, it is undisputed that Johnson never lodged a proper grievance at the prison with respect to any of the incidents and allegations arising out these May and June, 2008, lock-downs at the prison. (Id. Ex. B, ¶¶22-34.) Johnson failed to grieve any of these prison conditions, despite having received a copy of the manual outlining this grievance policy and being aware of these grievance procedures. (Id.)

Johnson's failure to timely pursue these administrative remedies has substantive significance for the Plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Jones grounded in alleged violations of the Eighth

Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency.... Moreover, even if only a small percentage of cases settle, the federal courts are

> saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006).

12

This broad rule admits of only one, narrowly defined exception, an exception which appears to be inapplicable here. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F.App'x at 368. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In this case, it appears that Johnson failed to timely file any grievances relating to matters arising out of this 2008 prison lock-down. Thus, a straightforward application of the PLRA's exhaustion requirements, which include a procedural default component requiring inmates to fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), calls for dismissal of this action

Johnson's efforts to avoid this outcome, and evade dismissal of this action based upon his failure to properly exhaust his administrative remedies, are unavailing. Indeed, Johnson's response to this motion does not in any intelligible way seek to contest or excuse this failure to exhaust these administrative remedies, but rather merely advances Johnson's own individual, and murky, views regarding the scope of federal jurisdiction.

Indeed, this case aptly illustrates why proper, timely administrative exhaustion should be required. One of the principal goals of this mandatory exhaustion requirement is "to create a record for subsequent proceedings". Nyhuis v. Reno, 204 F.3d 65, 76 (3d Cir. 2000)(citations omitted). Here, this important goal cannot be fully met due to Johnson's failure to timely present his claims to prison officials. This shortcoming, which can be avoided by timely exhaustion of grievances, is particularly acute in this case since the evidence which can now be marshaled nearly two years

after this incident casts grave doubt upon the validity of Johnson's claims. For example, Warden DeRose's uncontested declaration, (Doc. 60. Ex. B), flatly disputes Johnson's claims regarding denial of religious materials, and the conditions under which inmates were housed at the prison in May and June of 2008. Proper exhaustion of prison grievance procedures would have permitted these issues to be addressed, and a factual record to have been developed in a timely fashion. The unexplained failure to pursue these grievance procedures, therefore, is a significant default by Johnson, and one which must necessarily yield substantial consequences.

In this case, the uncontradicted materials submitted by the Defendants show that Johnson did not timely pursue his administrative remedies, and Johnson's response to the Defendants' summary judgment motion provides no explanation for his failure to pursue these grievances in the prison grievance system. Accordingly, the Defendants' motion for summary judgment on administrative exhaustion grounds should be granted.

## IV. <u>**Recommendation**</u>

For the reasons set forth above, IT IS HEREBY RECOMMENDED THAT Defendant's motion for summary judgment (Doc. 57) be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of January, 2011.

                                                *S/Martin C. Carlson*
                                                Martin C. Carlson
                                                United States Magistrate Judge